RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DR. EUNA MCGRUDER,

*Plaintiff-Appellee*,

v.

METROPOLITAN GOVERNMENT OF NASHVILLE &
DAVIDSON COUNTY, TENNESSEE dba Metropolitan
Nashville Public Schools,

*Defendant-Appellant*.

⎫
⎬
⎭

No. 22-5761

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:17-cv-01547—William Lynn Campbell, Jr., District Judge.

Decided and Filed:  April 17, 2024

Before:  BATCHELDER, MOORE, and CLAY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  J. Brooks Fox, METROPOLITAN GOVERNMENT OF NASHVILLE &
DAVIDSON COUNTY, Nashville, Tennessee, for Appellant.  Brian C. Winfrey, THE WINFREY
FIRM, Nashville, Tennessee, for Appellee.

─────────────────

## OPINION

─────────────────

CLAY, Circuit Judge.  In 2017, Plaintiff Euna McGruder sued Defendant Metropolitan
Government of Nashville and Davidson County ("Metro Nashville") in United States District
Court for retaliation under Title VII, 42 U.S.C. § 2000, *et seq.*  In 2021, a jury awarded McGruder
$260,000 for her claim, and the district court ordered Metro Nashville to reinstate her to her

previous position.  Metro Nashville appeals the district court's reinstatement order and argues that the entirety of McGruder's claims—including the jury award—should be barred by judicial estoppel due to her failure to disclose her cause of action against Metro Nashville when she filed for Chapter 7 bankruptcy in 2018.  However, this Court lacks jurisdiction to consider Metro Nashville's judicial estoppel claims as applied to non-final, non-appealable orders that are not before this Court.  And the district court did not abuse its discretion in ordering McGruder's reinstatement, which, as an equitable remedy, is not barred by judicial estoppel.  For the reasons set forth below, we **AFFIRM** the district court's reinstatement order and otherwise **DISMISS** Metro Nashville's appeal for lack of jurisdiction.

## I.  BACKGROUND

Until her termination, Dr. Euna McGruder served as the Executive Officer of Priority Schools for the Nashville public school system, operated by Metro Nashville.  After McGruder investigated allegations of racial discrimination at a Nashville middle school, Metro Nashville fired her in January 2016.  In 2017, McGruder sued Metro Nashville, alleging that her termination constituted illegal retaliation in violation of Title VII.

Meanwhile, on June 28, 2018, after filing the instant Title VII suit, McGruder filed for Chapter 7 bankruptcy in Atlanta, Georgia, her residence at the time.  McGruder did not disclose in her bankruptcy filing that she had a pending cause of action against a third party that could result in money damages. The potential proceeds of McGruder's Title VII claim were therefore not counted as part of her bankruptcy estate.  McGruder claims that she made her bankruptcy counsel aware of her Title VII suit and that counsel never informed her that she should disclose the suit to the bankruptcy court.  The bankruptcy judge discharged all of McGruder's debts, which amounted to over $100,000.

In December 2021, McGruder's retaliation claim proceeded to trial in the U.S. District Court for the Middle District of Tennessee.  A jury found in her favor and awarded her $260,000 in compensatory damages and $0 in back pay.  In post-trial motions, McGruder moved to amend the judgment to award her back pay, due to the jury's failure to award any back pay despite her successful retaliation claim, and requested payment of attorneys' fees.  The district court granted

the motion for attorneys' fees, set aside the $0 award for back pay, and ordered a new trial on back pay.  McGruder also requested reinstatement to her Metro Nashville job, which the district court ordered as an equitable remedy.  Metro Nashville timely appealed the district court's order awarding McGruder reinstatement, and moved to stay the order pending appeal.

Shortly after filing its notice of appeal of the reinstatement order, Metro Nashville discovered that McGruder had failed to disclose the existence of her Title VII claim to the bankruptcy court.  In a motion to revise the district court's previous orders granting relief to McGruder, Metro Nashville urged the district court to invoke the doctrine of judicial estoppel to dismiss McGruder's case with prejudice.  It argued that McGruder's omission amounted to a manifest injustice against the bankruptcy proceedings as well as an abuse of the judicial process.  In response, McGruder argued that her mistake was inadvertent and that the district court "should not enforce this equitable doctrine to allow Metro to escape all . . . accountability."  R. 128, Page ID #2530.  After Metro Nashville filed its motion to dismiss, McGruder also informed the bankruptcy estate of her claim against Metro Nashville.  McGruder averred that she has requested that the bankruptcy proceedings be reopened and that the trustee appear in the present action "even if it costs her all or a substantial portion of the remaining available monetary remedy."  *Id.* at Page ID #2545.

The district court concluded that it could not exercise jurisdiction over Metro Nashville's judicial estoppel claim, given that Metro Nashville's earlier notice of appeal had divested the court of jurisdiction over the case.  Finding that Metro Nashville's judicial estoppel claim raised a serious legal question, the district court granted Metro Nashville's motion to stay the reinstatement order pending appeal.

## II. DISCUSSION

### A. Jurisdiction

This Court "must satisfy itself that appellate jurisdiction exists to hear the appeal." *United States v. Michigan*, 134 F.3d 745, 748 (6th Cir. 1998) (per curiam).  First, we consider McGruder's argument that we lack jurisdiction to review the judicial estoppel claim because Metro Nashville did not include the claim in its notice of appeal.  A notice of appeal must "designate the judgment—

or the appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). "[A] court of appeals has jurisdiction only over the areas of a judgment specified in the notice of appeal as being appealed." *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008). The purpose of this jurisdictional requirement is "to ensure that the [notice of appeal] provides sufficient notice to other parties and the courts" of what will be raised on appeal. *Smith v. Barry*, 502 U.S. 244, 248 (1992).

McGruder is correct that the notice of appeal does not encompass any arguments Metro Nashville made in the district court about judicial estoppel. In fact, the notice of appeal could not do so as Metro Nashville filed its motion to dismiss on judicial estoppel grounds *after* it filed its notice of appeal. However, despite its omission from the notice of appeal, we find for two reasons that this Court has jurisdiction to consider Metro Nashville's judicial estoppel argument—though, as discussed below, not in its entirety. First, the general concern regarding notice to appellees is not applicable in this case, where Metro Nashville raised its judicial estoppel claim in the district court, and McGruder responded to that motion. Therefore, McGruder had clear notice of Metro Nashville's judicial estoppel claim, and was aware that this claim could arise on appeal as well.

Second, this Court can consider a judicial estoppel claim *sua sponte*. *See Tangwall v. Looby*, 109 F. App'x 12, 14–15 (6th Cir. 2004) (per curiam) (disposing of the case on judicial estoppel grounds even when the issue was not considered by the district court); *DeMarco v. Ohio Decorative Prods., Inc.*, 19 F.3d 1432 n.5 (6th Cir. 1994) (table) ("[E]ven had defendants not raised the argument on appeal, we could sua sponte consider whether judicial estoppel is appropriate under the facts presented."); *see also New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (noting that judicial estoppel is intended to protect the "integrity of the judicial process" and is therefore "an equitable doctrine invoked by a court at its discretion" (citation omitted)). The broad latitude that this Court enjoys to consider judicial estoppel arguments weighs in favor of exercising jurisdiction over Metro Nashville's judicial estoppel claims, even if those claims were not explicitly addressed in the notice of appeal.

Although neither party raises the issue, we must also consider whether we can exercise jurisdiction over Metro Nashville's judicial estoppel arguments as they relate to non-final orders from the district court. This Court, with limited exceptions, has jurisdiction only over appeals of

final orders.  28 U.S.C. § 1291.  Metro Nashville's appeal of the reinstatement order falls within one of the few exceptions to this rule.  28 U.S.C. § 1292(a)(1) (recognizing appellate jurisdiction over interlocutory orders granting injunctive relief).  But that is the only issue over which we have jurisdiction in this appeal.  The other claims that Metro Nashville urges this Court to judicially estop—including the jury award for monetary damages, the imminent back pay trial, and the district court's order awarding attorneys' fees—are not final, appealable orders before this Court.  Metro Nashville appears to have implicitly conceded as much below, acknowledging in its motion to dismiss McGruder's claims that "no final order has been entered in this case."  R. 126, Page ID #2516.  Nor do the other claims, unlike the reinstatement order, fall within a statutory exception to the final order doctrine.  Under these circumstances, we lack jurisdiction to apply judicial estoppel against claims not properly before us.

This holding is consistent with both our precedent and that of our sister circuits.  We have previously held that raising the issue of judicial estoppel does not "create jurisdiction."  *United States v. Combs*, No. 23-5153, 2023 WL 9785711, at *2 (6th Cir. Sept. 12, 2023) (per curiam) (order).  And in similar though not identical circumstances, other circuits have recognized judicial estoppel's inability to confer subject matter jurisdiction.  *See Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 34 (1st Cir. 2018) ("[T]he doctrine of judicial estoppel cannot be applied to create federal subject-matter jurisdiction that is otherwise lacking."); *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 162–63 (3d Cir. 2013) ("We therefore decline to apply equitable principles in a way that would impermissibly expand federal judicial power in violation of Article III."); *Gray v. City of Valley Park*, 567 F.3d 976, 982 (8th Cir. 2009) ("[W]e have failed to find any precedent, and the City cites to no authority, supporting the application of [judicial estoppel] in the face of an alleged jurisdictional default."); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227–28 (10th Cir. 2011) ("[W]e are not inclined to widen [the well-pleaded complaint rule] by holding that a party may establish subject-matter jurisdiction based on complete preemption via judicial estoppel.").  In line with this persuasive authority, we hold that a party's judicial estoppel claim cannot create a previously unrecognized exception to the long-standing jurisdictional rule that generally appellate courts have authority to rule only on final orders from district courts.

In so holding, we acknowledge the bounds of our jurisdiction. Accepting Metro Nashville's arguments—indeed, even considering them—would require this Court to assert jurisdiction over non-final orders, something we are statutorily prohibited from doing with few exceptions, none applicable to anything other than the reinstatement order in this case. 28 U.S.C. § 1291. And this Court's *sua sponte* authority to consider judicial estoppel does not and cannot change the statutory mandate of our jurisdiction. Instead, parties must await a final, appealable order from the district court before they can assert judicial estoppel before us. Because the only appealable order before us in this case is the district court's reinstatement order, we consider only Metro Nashville's argument that this order should be judicially estopped, and reserve for a later day the question of the applicability of judicial estoppel to McGruder's other claims, should the parties choose to pursue such arguments.

Though we leave the decision of whether to apply judicial estoppel to McGruder's jury award and imminent backpay trial to the district court to consider in the first instance, we take heed of McGruder's arguments that judicially estopping her claims at this juncture potentially risks awarding Metro Nashville—which a jury has found to have violated federal law—an unearned windfall. *See* Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4477.9 (3d ed.) ("Allowing this windfall undermines enforcement of the substantive law. The defendant is enriched by the value of the estopped claim without any justification beyond the perceived needs of bankruptcy administration."). We note that at least one sister circuit has contemplated a different remedy, involving the bankruptcy trustee as a party to the claim so that the debtor's creditors can see the benefit of the jury award. *See, e.g.*, *Reed v. City of Arlington*, 650 F.3d 571, 579 (5th Cir. 2011) (affirming the district court's order directing the trustee to collect the judgment on behalf of the estate and any remaining funds to be refunded to the defendant); *see also Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit."); Caryn Wang, *The Last Estop: Why Judicial Estoppel Should Be A Court's Last Resort for Undisclosed Lawsuits from Bankruptcy*, 66 Emory L.J. 1209, 1246 (2017) (recommending that similar lawsuits "be stayed so the parties can petition the bankruptcy court to reopen the bankruptcy case to . . . permit the bankruptcy court to properly administer the asset").

## B. Reinstatement

Having satisfied ourselves that we have jurisdiction over Metro Nashville's judicial estoppel arguments only as applied to the reinstatement order, we now turn to the propriety of that order and whether it should be judicially estopped. Metro Nashville challenges the district court's order reinstating McGruder to her former post at Metro Nashville, arguing that (1) judicial estoppel should bar the reinstatement order, and (2) the reinstatement order was improper as a matter of law. However, we hold that judicial estoppel need not be applied to claims of equitable relief not disclosed in prior bankruptcy proceedings. Additionally, we find that, on the merits, the district court did not abuse its discretion in granting McGruder's reinstatement.

Judicially estopping McGruder's reinstatement would not serve the goals of the doctrine. We have previously emphasized that the doctrine of judicial estoppel "should be applied with caution to 'avoid impinging on the truth-seeking function of the court.'" *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir. 1990)); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (judicial estoppel should not apply unless it is "tailored to address the harm identified and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct" (citation omitted)). Courts have generally applied judicial estoppel against claims that debtors fail to disclose in their bankruptcy filings to prevent debtors from disclaiming causes of action in order to minimize their assets in bankruptcy proceedings. *See Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 428 (6th Cir. 2005); *Davis v. Dist. of Columbia*, 925 F.3d 1240, 1255–56 (D.C. Cir. 2019). But this justification extends only to disclosures that might materially alter the bankruptcy proceedings, and therefore does not apply to claims for injunctive relief. *See* Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4477.9 (3d ed.) ("The theory is that an injunction does not generate funds that can be distributed to creditors."); *see also Barger v. City of Cartersville*, 348 F.3d 1289, 1297 (11th Cir. 2003) ("[The plaintiff's] claim for injunctive relief (*i.e.* her request for reinstatement) would have added nothing of value to the bankruptcy estate even if she properly disclosed it."), *overruled on other grounds by Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017).

Against this backdrop, the reinstatement order is not barred by judicial estoppel. As opposed to McGruder's claims for money damages, a claim for reinstatement likely would not have been relevant to the bankruptcy court's determination of the proper disposition of McGruder's debts. The omission of the reinstatement claim did not erroneously minimize McGruder's assets, given that Chapter 7 creditors are paid with pre-petition assets, making McGruder's future earnings not pertinent to the proceedings. Barring the reinstatement order would therefore not serve the purpose of judicial estoppel. This is true despite Metro Nashville's claim that reinstatement requires it to pay McGruder future wages, rendering the reinstatement a form of monetary relief. However, by that standard, judicial estoppel could bar any injunctive relief that happens to entail some financial benefit to the claimant—which includes most injunctive relief. We do not see the need to extend judicial estoppel so far past its stated goals. Therefore, we conclude that judicial estoppel does not bar McGruder's reinstatement.

On the merits, the reinstatement order was also proper as a matter of law. The availability of reinstatement is "entrusted to the sound discretion of the district court, and a decision granting such relief is reviewed by this Court only for abuse of discretion." *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004) (citation omitted). "We have held that victims of discrimination are presumptively entitled to instatement or reinstatement . . . and that reinstatement is the preferred equitable remedy in cases where discrimination has been proved." *Id.* at 761 (citation omitted); *see also Shore v. Fed. Express Corp.,* 777 F.2d 1155, 1159 (6th Cir. 1985).

Metro Nashville argues that the district court abused its discretion in awarding McGruder reinstatement in two ways: (1) the trial evidence and the district court's own statements foreclose reinstatement as a remedy and (2) reinstatement is improper where it would require displacing a third party who has since taken the job and where there is hostility between the parties. Both arguments are unavailing.

Turning to Metro Nashville's first claim that the district court's reinstatement order contradicts the factual record established at trial, we find that the district court made no error. To be sure, the district court at trial expressed concern about the then-hypothetical reinstatement because someone else was performing McGruder's former role and because there may be hostility

between the parties.  However, the district court also noted that it would reserve ruling on the reinstatement issue until after the jury had returned its verdict.  And none of the district court's statements at trial prevented it from later granting a motion for reinstatement.  Metro Nashville's concern with the district court's trial statements does not overcome the presumption that victims of Title VII violations are entitled to reinstatement.

Second, Metro Nashville argues that a district court abuses its discretion in ordering reinstatement where such reinstatement would entail displacement and where there is hostility between the parties.  But Metro Nashville cites no case in which this Court has reversed a reinstatement order because those conditions were present.  Instead, it cites two cases that are either silent on the issue or favor McGruder's position.  In *Shore*, the employer conceded that reinstatement may be an inappropriate remedy in that case due to displacement and hostility—but there was no reinstatement order for the Court to evaluate, so the Court addressed the issue of whether front pay was necessary to make the plaintiff whole under Title VII.  777 F.2d at 1159.  And in *Fuhr*, as in this case, the employer "emphasized a number of cases where the courts have concluded that reinstatement was not proper" due to displacement.  364 F.3d at 761.  But this Court correctly noted that "[t]hese cases demonstrate only that the district court probably would not have abused its discretion had it denied [the plaintiff] equitable relief.  They do not support the contention that the district court abused its discretion by granting it."  *Id.*  *Fuhr*'s reasoning is directly on point for our purposes; merely invoking displacement and hostility is not enough to show an abuse of discretion when a district court orders reinstatement.

Contrary to Metro Nashville's arguments, this Court has not established the categorical rule imagined by Metro Nashville that those conditions automatically preclude reinstatement, and with good reason.  Such a rule could encourage employers who are accused of Title VII violations to replace employees whom they may have unlawfully fired and to litigate in a hostile manner to prevent a potential reinstatement order.  And so strictly limiting reinstatement would effectively foreclose it as a remedy for Title VII plaintiffs.  *Cf. Reeves v. Claiborne Cnty. Bd. of Educ.*, 828 F.2d 1096, 1102 (5th Cir. 1987) ("If the existence of a replacement constituted a complete defense against reinstatement, then reinstatement could be effectively blocked in every case merely by hiring an innocent third party after the retaliatory purpose was achieved. Thus, the deterrent effect

of the remedy of reinstatement would be rendered a nullity."); *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1138–39 (8th Cir. 1981) ("To deny reinstatement to a victim of discrimination merely because of the hostility engendered by the prosecution of a discrimination suit would frustrate the make-whole purpose of Title VII."). This Court's precedent favors reinstatement in cases such as this one. Therefore, the district court did not abuse its discretion in ordering McGruder's reinstatement.

### III.  CONCLUSION

For the above reasons, the district court did not abuse its discretion in awarding McGruder reinstatement, and judicial estoppel should not bar her equitable remedy. This Court does not, at this time, have jurisdiction to apply judicial estoppel to the non-final and therefore non-appealable jury award, forthcoming back pay trial, or award of attorneys' fees. We therefore **AFFIRM** the district court's reinstatement order and otherwise **DISMISS** Metro Nashville's appeal for lack of jurisdiction.